## APPEAL OF ABATTOIR REALTY CO.

Docket No. 3346. Submitted October 14, 1925. Decided January 21, 1926.

Two corporations *held* affiliated.

*Howard N. Ragland, Esq.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined a deficiency for the years 1919, 1920, 1921, and 1922, of $14,887.49, from all of which the taxpayer appeals, upon the ground that it was, for the taxable years in question, affiliated with the Cincinnati Abattoir Co.

### FINDINGS OF FACT.

The Cincinnati Abattoir Co. was incorporated in April, 1893. In 1913 it was required, after a serious flood, to wreck two of its buildings, and it needed liquid assets. At that time its stock consisted of $500,000 common, $200,000 first preferred, and $300,000 second preferred. The Abattoir Realty Co. was organized in April, 1914, with $400,000 common and $400,000 preferred. Immediately, the Cincinnati Co., by deed dated June 18, 1914, transferred all of the real property in its manufacturing plant to the Realty Co., in consideration of $800,000. This consideration was paid by the issuance of all the Realty Company's stock in the name of the Cincinnati Co.

On the same date the Realty Co. leased the property to the Cincinnati Co., giving to the latter the right to repurchase for $800,000. By the terms of the lease the Cincinnati Co. was to pay, in addition to the annual rental of $36,000, payable semimonthly, all of the taxes, including income taxes, of the Realty Co., and all expenses of the Realty Co. incurred in maintaining its offices and in conducting its business in respect of the leased premises. Right of reentry was reserved to the lessor after 30 days' default. It was provided "that before any dividends are paid on the common stock of the lessee, it shall out of its surplus profits acquire by redemption or purchase at not to exceed $110 per share at least 4 per cent in par value of the whole amount of preferred stock of the lessor at that time outstanding." The Realty Co. had no income or source of income other than the rental from the Cincinnati Co.

The preferred stock of the Realty Co. was sold principally to the stockholders of the Cincinnati Co. and the only voting rights of this preferred stock were contained in the following provisions:

Owners of preferred stock of the company shall have the special power to vote for and to elect a majority of its directors at any meeting of stockholders held for the purpose of electing directors.

During the taxable years in question the Cincinnati Co. owned all of the common stock of the Realty Co. and none of the preferred stock. The preferred stock of the Realty Co. was held as follows:

|  | Stock-holders of the Cincinnati Co. | Others. |
|---|---|---|
|  | Per cent. | Per cent. |
| Jan. 1, 1918 | 69. 19 | 30. 81 |
| Dec. 31, 1918 | 65. 46 | 34. 54 |
| Dec. 31, 1919 | 66. 14 | 33. 86 |
| Dec. 31, 1920 | 66. 65 | 33. 35 |
| Dec. 31, 1921 | 67. 85 | 32. 15 |
| Dec. 31, 1922 | 67. 92 | 32. 08 |

During 1919, the directors of the Realty Co. were Jesse Lippincott, H. B. Schmidt, Charles F. Barrett, Miles T. Watts, and Robert H. West. Barrett, Schmidt, and Lippincott owned no preferred stock of the Realty Co. West and Watts did. Barrett and Schmidt owned stock in the Cincinnati Co. Lippincott personally owned no stock, but the Cincinnati Union Stock Yards Co., of which Lippincott was president, owned $50,000 of such stock. Lippincott represented the Stock Yards Co. on the board of the Realty Co.

In 1920 the directorate remained the same. In 1921 Schmidt and Watts died and Roth and Eschbook were elected directors. Roth owned no preferred stock of the Realty Co. and Eschbook did. Roth represented the John C. Roth Packing Co., the stock of which was owned entirely by the Cincinnati Co. These directors also served in 1922.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

STERNHAGEN: The facts set forth disclose a complete unity of the enterprise, which was inherent in the creation of the Realty Co. and has remained so since. The Cincinnati Co. has assumed the material responsibilities of the Realty Co. and dominates it completely. It owns all the common stock and its stockholders own two-thirds of the preferred. The directors are such persons as the Cincinnati Co. selects. The right of preferred stockholders to elect a majority of the directors is controlled by the Cincinnati Co. and its stockholders. The remaining preferred stockholders, even were they hostile to the Cincinnati Co. and its interests and were to vote or act in unison, could not be effectively adverse to the Cincinnati Co. But, so far as this record shows, there is no diversity of interest. Taking all

the circumstances together, we are of opinion that the two corporations were affiliated within the taxable years in question.

On reference to the Board, SMITH and TRAMMELL dissent.